**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yvette Rodriguez Arteaga,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>                    Defendant. | No. CV-13-00833-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Yvette Rodriguez Arteaga seeks judicial review of the Commissioner's decision finding her not disabled. Doc. 17. For the reasons that follow, the Court will deny Plaintiff's motion.

**I.      Background.**

On September 30, 2007, Plaintiff was the victim of a gunshot to her face. The bullet shattered her right jaw and teeth and tore through her tongue and lip. A CT scan showed no evidence of acute intracranial hemorrhage and no evidence of any acute abnormality, but it did reveal that she had bullet fragments lodged in her cervical spine. Plaintiff underwent a number of surgeries to repair her jaw and facial tissues. She was discharged in stable condition on October 16, 2007. A week later, her surgeon found her to be healing well with no signs of infection. He unwired her jaw in November 2007.

Plaintiff did not seek additional treatment for any issue related to the gunshot wound until late December 2009, approximately three months after she applied for benefits. She sought treatment at Access2Care Family Medical Center where she

reported that she had experienced non-specific pain ever since being shot in her face. Tr. 394. During the 18 months that she was treated at Access2Care, she was treated for jaw pain (Tr. 383, 390-91), chest pain (Tr. 378), neck pain (Tr. 365-67, 377), shoulder pain (Tr. 366, 377), and lower back pain (Tr. 365-71, 377). Plaintiff was also receiving treatment from Dr. Calderon for jaw pain. Dr. Calderon found no abnormalities on physical examinations in August 2010, January 2011, and February 2011. After adjusting Plaintiff's medications, Dr. Calderon concluded in February 2011 that Plaintiff's "right atypical facial pain" was "[w]ell controlled." Tr. 408.

Plaintiff applied for child's insurance benefits based on disability on November 10, 2009. Tr. 16. She also protectively filed an application for supplemental security income on September 22, 2009. *Id*. Plaintiff alleged disability beginning on September 30, 2007, in both applications. *Id*. After a hearing on August 19, 2011, an Administrative Law Judge ("ALJ") issued an opinion on August 25, 2011, finding Plaintiff not disabled. *Id*. Plaintiff's request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. *Id*. at 3.

**II.     Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

Determining whether a plaintiff is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently engaged in

substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

### III.  Analysis.

Plaintiff contends that the ALJ's decision is incorrect on four grounds. First, she asserts that the ALJ erred in not finding that her "blackouts" and facial pain were severe limitations. Second, she argues that the ALJ failed to properly weigh the opinion of a treating physician. Third, she argues that the ALJ improperly discounted her subjective testimony concerning the intensity, persistence, and limiting effects of her pain. Finally, she contends that the ALJ erred in relying on the Medical-Vocational Guidelines. The Court will consider each argument in turn.

#### A.  Severe Limitation.

At step two, the ALJ found that Plaintiff had a severe impairment. Tr. 18. The ALJ explained that the "claimant's symptoms arising from her borderline intellectual functioning caused and will continue to cause more than minimal work-related functional limitations." *Id.* Plaintiff argues that the ALJ should have also found that her memory impairment and facial pain were severe impairments. Doc. 17 at 8. The Court need not address Plaintiff's argument, however, because this alleged deficiency in the ALJ's decision did not prejudice Plaintiff. *See Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (finding no reversible error when ALJ failed to consider obesity at step two, but considered it at subsequent steps). Assuming without deciding that this omission constituted legal error, it could only have prejudiced Plaintiff in step three or step five because the other steps, including this one, were resolved in her favor.

1  Although Plaintiff contends that the ALJ erred in not finding that her memory loss
2  and facial pain constitute a severe impairment, she has not argued that either of those
3  impairments meets or medically equals a listed impairment – the inquiry at step three.
4  Plaintiff does not specify which listing she believes she meets or equals.  Further, she
5  does not set forth any evidence that would support the finding of a listed impairment.  20
6  C.F.R. § 404.1525(d).  Plaintiff bears the initial burden of proving a disability.  *See*
7  *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  In addition, an ALJ is not
8  required to discuss the combined effects of a claimant's impairments or compare them to
9  any listing in an equivalency determination unless the claimant presents evidence in an
10  effort to establish equivalence.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).
11  Plaintiff has presented no evidence of equivalence.

12  The ALJ considered Plaintiff's memory loss and facial pain in step five when
13  assessing her RFC.  The ALJ made frequent reference to Plaintiff's testimony and
14  medical evidence regarding her memory loss and facial pain.  Tr. 20-24.

15  The Court concludes that even if the ALJ erred in not finding Plaintiff's memory
16  loss and facial pain to be severe limitations, it was not reversible error under *Burch*.

### B.  Treating Physician Opinion.

Plaintiff's primary attack on the ALJ's decision focuses on the weight given to a medical opinion by Physician's Assistant Mr. Mitchelson.[1]  Tr. 23-24.  In January 2011, Mr. Mitchelson completed a check-the-box form opining that Plaintiff's headaches would result in daily absences that would render her completely unable to work and that Plaintiff had extreme physical limitations that rendered her unable to sit for more than two hours of an eight hour work day, stand or walk for more than 20 minutes, or lift or carry five pounds.  Tr. 372-73.  The ALJ accorded this opinion little weight for a number of reasons.  The ALJ found that it was not rendered by an acceptable medical source, it

---

[1] The ALJ's decision refers to this individual as Robert McPherson.  The individual who filled out and signed the headache questionnaire also identified themself as Robert McPherson, PA.  The Court's order will nevertheless refer to the individual as Mr. Mitchelson because that is the name used in the parties' briefs.

- 4 -

was not supported by the medical evidence, it was not consistent with Plaintiff's subjective complaints, and it was inconsistent with the ALJ's observations of Plaintiff. Tr. 23-24.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). The opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

Plaintiff argues that a treating physician's opinion is accorded controlling weight if it is supported by "medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record." Doc. 17 at 6; *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). Accordingly, she asserts that the January 2011 form completed by Mr. Mitchelson should be given controlling weight or at least significant deference.

Plaintiff's argument fails to recognize, however, that Mr. Mitchelson is not an "acceptable medical source" for establishing impairment. 20 C.F.R. § 404.1513; *Molina v. Astrue*, 674 F.3d 1104, 1111 n. 3 (9th Cir. 2012) (noting that regulations have been altered such that medical employees who are supervised by licensed physicians can no longer function as acceptable medical sources). Mr. Mitchelson's medical opinions are not entitled to the same deference accorded to treating physicians under *Andrews*. Instead, Mr. Mitchelson's opinion must be evaluated under the framework set forth in 20 C.F.R. § 404.1527(c), which includes the following factors: common sense indicators of

reliability; consistency with the record; and medical source's relative level of specialization. Medical opinions from non-acceptable medical sources are not entitled to the same deference and the Ninth Circuit has affirmed analyses discounting such sources for "germane" reasons. *Molina*, 674 F.3d at 1111.

The ALJ provided germane reasons for discounting Mr. Mitchelson's medical opinion. The ALJ noted Mr. Mitchelson's opinion that Plaintiff is in constant pain, can never push, pull, lift, or carry any weight, and can sit no more than 20 minutes at a time, and observed that even Plaintiff does not claim such limitations. Tr. 23-24. For example, Plaintiff testified that her headaches were rather minor when controlled by medication. Tr. 306, 309; *Warre ex rel. E.T. IV v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding that impairments that can be controlled effectively with treatment are not disabling). In addition, the ALJ noted that Plaintiff sat comfortably for more than 20 minutes during the hearing. *Id*. at 24. The ALJ noted that no doctor has diagnosed Plaintiff with neurological abnormalities related to headaches, and that the medical evidence simply fails to show that Plaintiff's headaches result in more than a slight limitation on her activity. *Id.* at 24. The ALJ noted, for example, that Dr. Calderon's treatment notes indicate that Plaintiff's facial pain was "well-controlled" when properly medicated. Tr. 21, 408. The ALJ also noted that all three agency physicians who reviewed Plaintiff's medical record did not find Plaintiff nearly as limited as Mr. Mitchelson, and that Plaintiff's treatment records reflect only intermittent complaints of headaches. Tr. 21-24. Finally, the ALJ observed that Mr. Mitchelson is not a recognized medical source under Social Security guidelines. Tr. 24.

The Court concludes that the ALJ provided germane reasons for discounting Mr. Mitchelson's opinion, and that the reasons are supported by substantial evidence.

### C. Plaintiff's Subjective Testimony.

Plaintiff testified that she has had difficulty lifting a gallon of milk since sustaining the gunshot wound, due to nerve damage in her hand. Tr. 35-36, 39-40. She testified that she suffered from daily migraine headaches that occasionally became so

severe that she needed to lie in a dark, quiet room for days at a time. Tr. 40-41. Plaintiff also testified of ongoing jaw pain that persisted despite the use of medication. Tr. 43-45. She also testified that she suffered from short-term memory loss, long-term memory loss, and blackouts that caused her to lose her train of thought mid-conversation. Tr. 37-38. She reported that she could only sit for 20 seconds before her legs went numb and that her neck started to burn if she sat for too long. Tr. 42. She testified that she could only stand for about 45 minutes at a time and walk for about four minutes. She indicated that she napped for about an hour every other day. Tr. 42-43.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's subjective testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If the claimant meets this first test, and there is no evidence of malingering, then the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may consider the following factors: the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

At the first step, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" Tr. 20. At step two, however, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible[.]" *Id*. The ALJ canvassed objective medical evidence and opinions in the record to support this

conclusion. The ALJ juxtaposed Plaintiff's subjective testimony with consistently normal neurological findings (Tr. 222, 291, 325-38), the lack of diagnosed neurological abnormalities (Tr. 222, 291, 325-38), the conservative care that she received for facial pain and headaches (Tr. 365-71, 376-94, 408-09), and the fact that all three state agency physicians opined that Plaintiff suffered from no severe physical impairments and had no exertional limitations as a result of any of her impairments (Tr. 314-21, 325-34, 339-52). Tr. 21-24. The ALJ properly relied on these inconsistencies. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider conflicts between a claimant's statements and signs and laboratory findings); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 553 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony") (citation omitted). The ALJ also indicated that Plaintiff's statements made to treating providers were inconsistent with her subjective testimony. *See* 20 C.F.R. § 404.1529(c) (ALJ must evaluate credibility in light of inconsistencies in the record). For example, Plaintiff complained of headaches to treatment providers only intermittently, and her physician had noted that the pain was "well controlled." Tr. 21-22.

The Court concludes that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

### D. Reliance on Medical-Vocational Guidelines.

In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. pt. 404, subpt. P, app 2. The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids are a matrices of the "four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific

1    combinations of these factors exist in significant numbers in the national economy."
2    *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).  "The Commissioner's need for
3    efficiency justifies use of the grids at step five where they *completely and accurately*
4    represent a claimant's limitations."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.
5    1999).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's
6    functional capacity in ways not contemplated by the guidelines.  In such a case, the
7    guidelines would be inapplicable."  *Id*. at 1102.  "The fact that a non-exertional limitation
8    is alleged does not automatically preclude application of the grids.  The ALJ should first
9    determine if a claimant's non-exertional limitations significantly limit the range of work
10   permitted by his exertional limitations."  *Id*.  "[A] vocational expert is required only when
11   there are significant and sufficiently severe non-exertional limitations not accounted for
12   in the grid."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

13   Plaintiff claims that her non-exertional limitations associated with borderline
14   intellectual functioning make reliance on the grids inappropriate.  Doc. 17 at 9-10.  It is
15   not clear from Plaintiff's brief what she believes is wrong about the ALJ's reliance on the
16   grids.  It is possible that she asserts that medical source opinions contain additional non-
17   exertional limitations that were not considered by the ALJ at step five.  It is also possible
18   that she asserts that the grids do not account for borderline intellectual functioning.  The
19   Court will consider both arguments.

20   To the extent Plaintiff asserts that the ALJ was required to consider additional
21   non-exertional limitations contained in medical opinions at step five, the Court disagrees.
22   The ALJ need consider only those limitations that are supported by the record.  *Robbins*,
23   466 F.3d at 886; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  The Court
24   has explained above why the ALJ was justified in discounting the non-exertional
25   limitations recommended by Mr. Mitchelson.  Plaintiff argues that the opinions of Drs.
26   Toro, Rabara, and Levinson include additional non-exertional limitations that should
27   have been considered.  Doc. 17 at 10.  Plaintiff is incorrect.  Dr. Toro concluded that
28   Plaintiff had no exertional limitations, no postural limitations, no communicative

1  limitations, and no visual limitations.  He opined, however, that Plaintiff was to avoid all
2  exposure to workplace hazards due to her blackouts.  Tr. 333.  The ALJ concluded that
3  the medical evidence did not require a RFC limitation for blackouts because the
4  associated impairment was not severe.  Tr. 23.  The Court finds that this conclusion is
5  supported by substantial evidence because no other physician found any evidence that
6  Plaintiff suffered from such blackouts.

7  　　　The Court finds that the opinions of Drs. Rabara and Levinson do not contain any
8  non-exertional limitations not considered by the ALJ.  The ALJ gave great weight to the
9  opinions of Drs. Rabara and Levinson and based his RFC assessment on their opinions.
10  Tr. 22-23.  Although their medical opinions delve more deeply into the details of
11  Plaintiff's limited intellectual capabilities, they are consistent with the ALJ's conclusion
12  that Plaintiff can perform unskilled work.  *See* 20 C.F.R. § 404.1568(a) ("Unskilled work
13  is work which needs little or no judgment to do simple duties that can be learned on the
14  job in a short period of time.").

15  　　　To the extent that Plaintiff believes that the limitation of "unskilled labor" does
16  not account for the non-exertional limitations the ALJ found to be supported by
17  substantial evidence, she is incorrect.  The limitation to "unskilled work" accounts for the
18  non-exertional limitations – FSIQ of 70, extremely low processing speed, extremely low
19  auditory memory, extremely low delayed memory, and a poor ability to acquire, retain,
20  and retrieve knowledge – that Plaintiff suffers.  *Cf. Hoopai v. Astrue*, 499 F.3d 1071,
21  1076 (9th Cir. 2007).  The ALJ could therefore properly rely on the grids notwithstanding
22  Plaintiff's non-exertional limitations.  *See Sorter v. Astrue*, 389 F. App'x 620, 623 (9th
23  Cir. 2010) (noting that claimant's borderline intellectual functioning "would not affect
24  the utility of the Grids, which . . . emphasize unskilled work that can be performed
25  despite borderline intellectual functioning[.]").

26  　　　The Court concludes that the ALJ properly relied on the grids in determining that
27  Plaintiff was not disabled.
28  / / /

1   **IT IS ORDERED** that Plaintiff's motion (Doc. 17) is **denied**.  The Clerk shall
2   terminate this action.
3   Dated this 21st day of November, 2013.

_____
David G. Campbell
United States District Judge